# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Case No. 4:10cr242 |
| | § | (Judge Crone) |
| PERLA YASMINE RODRIGUEZ (9) | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter having been referred by the Honorable Marcia Crone, the Court held a hearing on January 23, 2014, and March 31, 2014, on Defendant's Motion to Withdraw Guilty Plea (Dkt. #323). In her motion, Defendant seeks to withdraw her guilty plea, which was accepted by the District Judge on August 28, 2013 (Dkt. #316).

## BACKGROUND

On November 14, 2012, Defendant Perla Yasmine Rodriguez was indicted in a one count Third Superseding Indictment alleging a violation of 21 U.S.C. § 846, Conspiracy to Possess with the Intent to Distribute Methamphetamine. On December 18, 2012, Defendant made her initial appearance in this Court. Defendant is in custody.

The Court appointed Ms. Bobbie Peterson Cate ("Cate") as Defendant's first attorney. On February 27, 2013, Mr. Gary Hill ("Hill"), who had been retained by Defendant's family, filed an Entry of Appearance and Substitution of Counsel for Defendant, which the undersigned granted. Defendant is currently represented by Mr. Don Bailey.

On August 26, 2013, Defendant appeared before the undersigned for her change-of-plea hearing, at which time Defendant entered an open plea of guilty. With consent of the parties, the plea hearing took place before the undersigned. On August 26, 2013, Defendant signed a statement

of facts in support of her plea of guilty (Dkt. #314). Defendant agreed to the facts contained in the written factual statement, which included that Defendant knowingly conspired to possess with the intent to distribute a controlled substance, and that the controlled substance was methamphetamine. The written factual statement also stated that the conspiracy involved transportation of over 1.5 kilograms of methamphetamine, actual, to Oklahoma City on behalf of Roberto Acosta and that Defendant assisted in the conspiracy by driving a vehicle to Oklahoma City, Oklahoma, from El Paso, Texas, on at least two occasions. The written statement also stated that "[a]t the time the defendant knew that the vehicle contained some type of illegal narcotic drug." In response to the Court's asking Defendant to explain in her own words what she did in this case, she stated, "I transport drugs. I didn't know what type of drug was - - I know it's something illegal. I know it was drugs, but I didn't know exactly what it was. But I know I was transporting." Upon questioning, Defendant agreed she was participating in a conspiracy to assist in transportation of some kind of drug and that she now knows that the drug was over 1.5 kilograms of methamphetamine actual. The written factual statement also states that some of the events described in the Third Superseding Indictment occurred in the Eastern District of Texas.

On August 28, 2013, United States District Judge Marcia Crone entered an Order adopting the Findings of Fact and Recommendation of United States Magistrate Judge, finding the Defendant guilty of Count One of the Third Superseding Indictment. On November 4, 2013, the initial Presentence Investigation Report ("PSR") was filed (Dkt. #318). The initial PSR recommended a sentence of 168 months' imprisonment.

On December 6, 2013, Defendant filed her Motion to Withdraw Guilty Plea (Dkt. #323). Defendant asserts that she never met with Hill, her previous retained attorney, to go over her

discovery or discuss her case, nor has she seen the discovery or the proof against her. Defendant asserts that the only time she met with Hill was on the day of the guilty plea. Defendant's motion requests that she be allowed to withdraw her guilty plea based upon her not understanding the elements of what the Government would have to prove if she went to trial. Further, Defendant asserts that although she has transported marijuana from El Paso to Oklahoma and Kansas previously, she is not aware any transaction that involved either the Eastern District of Texas or methamphetamine.

On December 8, 2013, the Government filed a response (Dkt. #324). The response examines the required factors and asserts that those factors warrant a rejection of Defendant's request to withdraw her plea of guilty. The Government further asserts that Defendant has not met her burden of presenting a credible reason why withdrawal of her plea would be "fair and just" under the circumstances.

On January 23, 2014, the Court held a hearing on the motion to withdraw. During the hearing, Defendant testified that the only time she had spoken to her lawyer, Hill, was the day of the plea hearing. She also testified that Hill never showed her the discovery in the case, despite her request to review the discovery. Defendant testified that Hill told her that her level would be twenty-eight. She stated that she informed Hill that she only transported marijuana and that she had no involvement with methamphetamine. Defendant also testified that she never did anything inside the Eastern District of Texas.

Defendant also testified that her first counsel, Cate, met with her and discussed the case on a couple of occasions after Cate had received discovery from the Government. Defendant also admitted that she told agents that she was smuggling narcotics for Robert Acosta and that she was

3

paid $4,000, including expenses, to smuggle narcotics from El Paso to Oklahoma City, Oklahoma. Defendant could not remember what route she took from El Paso to Oklahoma City, and she could not remember whether she went through New Mexico or up through Texas. She then stated that she did not drive through Dallas. Defendant also testified that while Cate was her attorney, Defendant began a proffer with the Government. Defendant testified that a proffer letter was signed by Defendant and Cate. Defendant then met with agents. Defendant also stated that she knew she was transporting "something illegal" and that it was drugs. Defendant stated that she did not want to speak up at the plea hearing, even though she noticed her counsel doing something disrespectful in court.

Upon questioning from the Court, Defendant stated that she pleaded guilty because Hill told her that she was not going to get a better deal than the one she signed. Since it was an open plea, Defendant stated she pleaded guilty because Hill told her that she would not get anything better.[1] When asked why the Court should allow her to withdraw her plea, Defendant stated that Hill did not help her, did not assist her, and she had questions to ask. She indicated that after reading her PSR she wanted to fight her case because what was contained in the PSR is not what happened. However, Defendant again admitted to the Court that she knew she was transporting illegal drugs.

At the end of the hearing, the Court allowed the record to remain open to allow Defendant to subpoena Defendant's former counsel Hill. On March 31, 2014, the Court continued the hearing. At the hearing, former retained counsel Hill and former Court-appointed counsel Cate both testified. Defendant also provided additional testimony. The Government also offered the testimony of Agent Derek Hubert ("Hubert").

---

[1] Her PSR level was a 36 and, after acceptance, a 34.

Cate has over twenty years of experience as an attorney and is board certified in criminal law by the Texas Board of Special Legalization. Initial discovery was provided to Cate sometime before January 18, 2013. Cate spent four hours reviewing the discovery then took the time to review the discovery with Defendant. On January 18, 2013, Cate requested a proposed plea agreement to review with Defendant. This plea agreement was provided on January 22, 2013. The plea agreement stipulated to an offense level of thirty-eight. Cate does not recall whether or not she reviewed the proposed plea agreement with her client. After a review of the discovery in the case, Cate decided that it was in Defendant's best interest to begin cooperating with the Government. On February 11, 2013, Cate and the Defendant signed a proffer letter, and Defendant began cooperating. Cate participated in a three-hour debrief with the Defendant and Government agents. Cate indicated that the discovery only showed Defendant being involved with marijuana, and there was nothing in the discovery that indicated that Defendant was involved in methamphetamine. Cate testified that she was trying to work towards a plea on the marijuana case, and that there was nothing linking Defendant to methamphetamine. However, before Defendant entered into any plea agreement, Hill substituted in as counsel for Defendant, and Cate never spoke to Hill nor did Hill ever request discovery from her.

After entering his appearance, Hill made an assessment of the case and decided that it would be in his client's best interest to continue to cooperate with the Government in the hopes of receiving an eventual sentence reduction pursuant to U.S.S.G. § 5K1.1. Hill testified that, after reviewing the plea agreement, he chose to advise his client to plead without an agreement in order to preserve the ability to appeal, and because he was not sure where the guideline levels would be set.

Immediately prior to the hearing, Hill met with Defendant and reviewed the case with her.

In this review, he discussed the following matters: (1) the base offense level under the sentencing guidelines; (2) the potential for a reduction pursuant to the Safety Valve; (3) his intent to argue for a "minor role" reduction; (4) potential credit for cooperation pursuant to Section 5K1.1; (5) potential "good time" credit which could reduce the amount of time that Defendant would spend incarcerated; (6) a potential reduction of her sentence based on acceptance into a drug treatment program; and (7) the effect of credit for time already served since her arrest. The only time Defendant met with Hill was on the day of the guilty plea.

Hill testified that he believed he reviewed some discovery, but no discovery is in his case file. Hill's file contains a letter from Defendant in which she requests her discovery. Hill testified that he did not respond in writing, but believed that he spoke to her by telephone. However, Hill admitted after further examination that he never spoke to her by telephone. Upon being questioned regarding marijuana and methamphetamine, Hill testified that Defendant thought the drug was marijuana and it turned out to be methamphetamine. Hill stated that these two drugs had no legal distinction, since both were a violation of the law. Hill relied upon conversations with the Government's counsel regarding venue being in the Eastern District of Texas. Hill did no further investigation on this case, other than discussing the case with the prosecutor. Hill testified, "I've been practicing law for 40 years. I can see one of these cases and know where it's going in about ten minutes, generally." Hill testified that he thought Defendant would be a level 38 and that she would be reduced to a 34, and that with further adjustments, she would be reduced to a level 27 and have a potential of thirty-seven months.[2] Hill also stated that, consistent with the Court's colloquy

---

[2] Counsel's worksheet is part of the record as part of Hill's file. Hill thought Defendant was eligible for the safety valve.

during the plea hearing, he advised Defendant that any figures are just estimates.

The Government presented the testimony of Hubert. Hubert testified that Defendant was a transporter of narcotics and money and would transport narcotics from Juarez, Mexico, to different locations throughout the United States and then transport money back to Juarez. Hubert testified that, based upon the evidence in the case, Defendant did pass through the Eastern District of Texas. He stated that sometimes Defendant would come through Dallas. Hubert also testified that there was someone arrested in the Eastern District of Texas that was part of this conspiracy.

At the March 31, 2014 hearing, portions of Hill's file were admitted under seal, and transcriptions of portions of telephone calls were submitted. On April 7, 2014, the Government filed its Notice Regarding Defense Exhibit.[3] The calls provided as follows:

> Call 1: - Perla is talking to unknown male. He asks her if she has spoke to Gary's office and she states she has not spoken to them in a while; maybe in 3 weeks. He tells her he spoke to Sylvia just prior to her phone call. They discuss the PSI and how she it is very high and is not what Gary told her it would be. She is upset at the recommendation even if it is the lower end. Perla states he, the attorney, told her they were going to reduce points for minor role, acceptance, and safety valve. Perla tells him Gary did not tell her what the true process was. She states he made her sign by telling her they were going to reduce many points and told her she I would qualify for minor role (says this several times). She tells him she wants her plea withdrawn and states she wants to see the evidence against her. She tells him she has a way to defend myself and knows she was involved in something but states she is not going to plead to something she didn't do. She tells him that she has talked to Sylvia about getting a new attorney because he didn't represent her in court; why should my family still be paying him. He tells her he has advised her family not pay him anymore. She is very concerned with her PSI and the amount of time. She tells him Gary told her she would be doing about 5 years and he was aware she had a prior felony. He also told her if she testified against other people

---

[3] At a motion hearing on March 31, 2014, the Defendant submitted Defendant's Exhibit 1. The exhibit purported to be an English language summary of four different recorded calls made by the Defendant in the Spanish language. The Court directed the Government to review the recordings of the calls and advise the Court if it had any objections to the accuracy of Defendant's Exhibit 1. The Government reviewed the recordings along with Defendant's Exhibit 1 and has no objection to the summaries of Calls 1, 3, or 4. With respect to Call 2, the Government asserts it is generally accurate, but would add additional language between the third and fourth sentences. Since Defendant has raised no objections, the Court will accept the transcriptions as modified (and unedited by the Court).

7

her sentence would be reduced but knows everyone hasped in her case. She tells him she knows she is not his priority. She tells him there are other cases e will take there and knows he, Gary, doesn't give a shit. Perla tells the UNK male she knows not going to be set free and knows she did something but not for the amount of time they are trying to give her. She states what she was involved in was marijuana. Perla tells UNK Male she needs an attorney that is going to fight for her. That will fight for what I did and not what someone else has done. They discuss her being in prison when this conspiracy started. Perla tells him she will send him a copy of her PSI so that he can discuss it with Gary; will send to her mom's house. She tells the UNK Male, the attorney's employee is telling her to find a new attorney, what more can be expected?

Call 2: between Perla and UNK Male - He tells her he spoke with Sylvia in Gary's office was supposed to have lunch with attorney Gary but was not able to because UNK Male went out of town. Perla tells him she has 14 days to submit changes but she wants to withdraw her plea. She feels desperate because she has no communication with attorney Gary. Perla maintains her innocence and states she was incarcerated at the time of this conspiracy. Perla tells unknown male about a document she has that lists the status of the other defendants on the case. Perla tells unknown male the document shows the #1 defendant which was murdered, the #2 defendant only receiving 67 months. Perla tells unknown male how is that possible they gave him 67 months he is one of the top ones and they are giving me 14 years. She states she did tell someone that she knew a person and yes it was her car, but they never caught her with anything.
No one can explain to me anything/evidence about the case. We can fight but I need the plea to be withdrawn. I just want him to help me and fight for me. He told me I was a minor role and that I would start at a level 34. I am at 36 and they reduced me 3 points but I am still looking at almost 15 years. He told me they were supposed to reduce me 5 more points from that. I ask you please to help me and let him know I want to fight this.

Call 3: Perla Rodriguez and Sylvia with Gary's office
Perla says she wrote to attorney and wants to know if he received it. Sylvia says yes he did receive and that she has just missed him. She also states that he is a man of very little words. It is very important to Perla for him to withdraw her plea. Sylvia tells her it is very difficult and for her to call back but to wait until next Thursday because Monday is a holiday, Columbus Day. Perla tells her she does not agree with her PSI and Sylvia tells she does not know all that is going on with her case but that she is writing down. Perla states she went to court with him but there was never much communication between them. Sylvia tells her she is not an attorney and is not familiar with her case. She ruther tells Perla that if she had an answer for her she would give her one. Perla advises her that attorney told her while in court she could with draw her plea. They further discuss where she is incarcerated and tells her she will talk to Gary about her concerns. Perla again tells her she wants her plea withdrawn and wants more information on her case. Perla states she hasn't seen anything on her case and was not involved. Sylvia tells her she worked with the federal government for 30 years and

knows the process. She further gives Perla an "example" of a conspiracy case but states she can not give her advice on her case. They also discuss some possible changes in federal cases. Perla tells her she knows she is not going to come out completely free from this but wants something reasonable; not level 38. Sylvia again tells her she will tell Gary she has called and her concerns. She tells Perla to call back again the following week and she will have answers to her questions. Perla tells her either that or if he could answer her questions in writing.

Call 4: Perla speaks with Sylvia in Gary's Office. Perla tells Sylvia that she is bothering again and Sylvia says no your not. Sylvia tells her she has the note with her questions and she has tried to give it to Gary but he tells her he doesn't have time right now because she wants him to withdraw her plea. She tells Perla he has not done it yet and thinks he might be saying no because there could be a possibility. He will not return because he has court and the next day he is leaving for Indianapolis. She believes he will return by Friday and wants her to call back on Friday but before 2pm because the leave at 2 pm. Perla asks her if he has said anything and Sylvia says "nothing, nothing". Sylvia tells her she did tell him she called and she is very anxious and she wants to withdraw her plea but states he just looks at her like "uggh". She further explains to Perla that he knows it will be difficult to withdraw her plea and that he has to prove 5 to 6 points as to why; further stating it is very difficult. Sylvia tells her to call back on Friday to see if maybe she will have some answers for her. Sylvia tells her "I am going to tell you the truth he hardly comes to the office and it's very hard to find him." Perla tells her if she is going to be like this for another 2 weeks she is going to have to withdraw his services because well. Sylvia interrupts and tells her "that is a good idea and I would recommend it." Perla tells her that is what I am going to do and Sylvia tells her to write a letter to the judge and she says yes that is what I am going to do. Perla tells her she is trying to be realistic and knows that he is in El Paso and she is in Bonham; knows the distance makes it difficult for him to fight. Instead she will find someone else and will write to the judge. Sylvia wishes her luck.

On April 14, 2014, the Government filed a supplemental response (Dkt. #337). On April 14, 2014, Defendant filed an additional brief (Dkt. #338).

## ANALYSIS
### Standard of Review

According to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure, a district court may grant a motion to withdraw a guilty plea before sentencing if the defendant shows "a fair and just reason." There is no absolute right to withdraw a guilty plea, and the Defendant bears the burden of establishing a fair and just reason for withdrawing her plea. *United States v. Puckett*, 505

9

F.3d 377, 382 (5th Cir. 2007) (citation omitted); *United States v. Lampazianie*, 251 F.3d 519, 523-24 (5th Cir. 2001). In deciding whether to permit a defendant to withdraw a guilty plea, the Court is granted "broad discretion." *United States v. Carr*, 740 F.2d 339, 344 (5th Cir. 1984) (citation omitted).

To determine whether a defendant may withdraw a plea of guilty prior to sentencing, this Court must look at the following factors: (1) whether the Defendant has asserted her innocence; (2) whether the Government would suffer prejudice if the withdrawal of the motion were granted; (3) whether the Defendant has delayed in filing her withdrawal motion; (4) whether the withdrawal would substantially inconvenience the Court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources. *Id.* at 343-44. The Court is not required to make a finding as to each individual factor. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). The *Carr* factors are considered for the totality of the circumstances and no single factor is dispositive. *Lampazianie*, 251 F.3d at 524; *Powell*, 354 F.3d at 370.

## Discussion

**Defendant's Assertion of Innocence**

Defendant asserts legal innocence by asserting that she did not have any involvement with methamphetamine and that venue was not proper in the Eastern District of Texas. To establish a violation of 21 U.S.C. § 846, the United States is required to demonstrate only that Defendant conspired to distribute or possess with intent to distribute a controlled substance, and not that she was aware that the substance was any particular drug. *See United States v. Andino*, 627 F.3d 41, 45-47 (2d Cir. 2010); *United States v. Rada-Solano*, 625 F.2d 577, 580 (5th Cir. 1980). Defendant

10

has never maintained that she was innocent of being involved in a drug conspiracy. She has admitted that she thought the drug she was transporting was marijuana rather than methamphetamine. The fact that the drug turned out to be methamphetamine and was not the drug she thought she was transporting is immaterial and is not an assertion of her innocence. Defendant fails to cite the Court to any case that allows a defendant to assert a claim of innocence based upon Defendant being mistaken about the drug she thought she was transporting.

With regard to venue, any statement that there was no connection to the Eastern District is contrary to her signed factual statement and her affirming those facts. Even her testimony at the motion hearings fails to clearly indicate that she never traveled through the Eastern District of Texas, since her first testimony was she did not remember the route taken. Moreover, the Government presented evidence that at least one of the members of the conspiracy was arrested in the Eastern District of Texas while being involved in Defendant's conspiracy. Thus, the Court finds that Defendant offers nothing to the Court to illustrate her innocence of being involved in a drug conspiracy.

In her plea colloquy with the Court, Defendant, under oath, agreed to the statement of facts and that she was pleading guilty to the facts that she conspired to distribute or possess with the intent to distribute and manufacture at least five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine or fifty grams or more of actual methamphetamine. Defendant also admitted that the events described in the Third Superseding Indictment occurred in the Eastern District of Texas. Defendant also stated that she understood the range of punishment. After pleading guilty, Defendant was interviewed by a United States Probation Officer and did not assert her innocence. During the hearings, Defendant never denied that she was

11

involved in the conspiracy.

**Delay in Filing Withdrawal Motion**

In *Carr*, the Fifth Circuit found a delay of twenty-two days before filing a motion for withdrawal of a guilty plea to weigh against allowing the defendant to withdraw his plea. *Carr*, 740 F.2d at 345. "The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.*

On August 26, 2013, Defendant pleaded guilty. Defendant filed her motion to withdraw her plea on December 6, 2013 (Dkt. #323). Defendant waited over three months from the time she entered her guilty plea to file her motion for withdrawal. It appears that Defendant also waited until after the initial PSR had been prepared before notifying the Court that she wanted to withdraw her guilty plea. The Court finds that Defendant was not prompt. Defendant's delay demonstrates a tactical decision, and Defendant's belief that she made a bad decision in pleading guilty. Therefore, the Court finds that Defendant's delay strongly favors denying the motion.

**Assistance of Counsel**

In order for a Defendant's guilty plea to be valid, "the defendant must have available the advice of competent counsel. The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000) (internal citations omitted).

In a recent case, the Fifth Circuit determined that close assistance of counsel under Rule 11(d)(2)(B) and "constitutionally ineffective assistance of counsel are distinct issues." *United States*

*v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009). Ineffective assistance is a basis for invalidating a conviction under the Sixth Amendment and not relevant to the decision of whether Defendant was denied close assistance of counsel. *Id.*

The question of whether Defendant received the close assistance of counsel "requires a fact-intensive inquiry." *Id.* Defendant's counsel at the time of her guilty plea is the not the same counsel presenting the motion to withdraw. Defendant was first represented by Cate. Until her replacement by Defendant, Cate provided Defendant with exemplary and astute counsel. Cate also felt that cooperation and a potential plea would be in Defendant's best interest. Cate also reviewed the discovery in the case with Defendant and participated in a debrief with the Government.

As for Hill's representation, the Court cannot say that Defendant did not receive close assistance of counsel. Hill had multiple telephone conversations with the prosecutor negotiating for Defendant and ultimately chose to opt for a plea without the benefit of a plea agreement because of a belief that the offense level that the Government was seeking was too high.[4] The Court does not condone Hill's lack of direct communication with Defendant, but his view of the case was consistent with Cate's.

Defendant was also asked during her plea colloquy whether she was satisfied with the representation provided by her counsel, and she answered that she was. "[S]olemn declarations in open court carry a strong presumption of verity." *Lampazianie*, 251 F.3d at 524 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Attorneys Hill and Cate have coordinated with Government agents directly to obtain further

---

[4] The decision to plead without a plea agreement was, at least in part, vindicated when the probation officer recommended a base offense level of thirty-six whereas the proposed plea agreement set the level at thirty-eight.

benefits for the Defendant. Therefore, the Court finds that Defendant was not without close assistance of adequate counsel in agreeing to plead guilty.

**Knowing and Voluntary Plea**

"For a plea to be knowing and voluntary, 'the defendant must be advised of and understand the consequences of the [guilty] plea.'" *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992) (quoting *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990)). Defendant must have notice of the nature of the charges against him, he must understand the consequences of his plea, and he must understand the nature of the constitutional protections he is waiving. *Matthew*, 201 F.3d at 365. For a guilty plea to be voluntary, it must "not be the product of 'actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant' or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel." *Id*. (quoting *Brady v. United States*, 397 U.S. 742, 750 (1970)).

In this case, the Court informed Defendant of the nature and consequences of her guilty plea. The Court informed Defendant of the rights she gave up when pleading guilty, the potential sentence she faced for pleading guilty, including imprisonment of ten years to life imprisonment, and the specific elements of the crime. Defendant stated that she understood the penalties she could receive, that she understood the elements of the offense, and that she understood her constitutional rights. She was also advised about the sentencing guidelines, and stated she understood that if she received a sentence longer than she was expecting, she would still be bound by her plea. She also testified that she understood the sentenced imposed may be different than any estimate her counsel, the Government, or the probation officer may have given her.

Defendant represented that her plea was freely and voluntarily made, and that no one forced

her, threatened her, or promised her anything other than what was contained in the plea agreement. Counsel indicated that Defendant was competent and able to cooperate with him.

After acknowledging the facts supporting her plea, Defendant entered a plea of guilty to count one of the Third Superseding Indictment. Having been advised as to the details and consequences of her plea, having repeatedly stated that she understood the proceedings, and having repeatedly acknowledged her guilt, Defendant's assertion that her plea was anything other than knowing and voluntary is contradicted by the record. *See United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002) (reviewing courts give great weight to the defendant's statement at the plea colloquy). The Court finds that Defendant's plea was knowing and voluntary.

**Remaining Factors**

The remaining factors for the Court to consider are as follows: (1) whether withdrawal would cause the Government to suffer prejudice if the motion were granted; (2) whether withdrawal would substantially inconvenience the Court; and (3) whether withdrawal would waste judicial resources.

The Government asserts that if the plea were withdrawn, additional work would be required because after the guilty plea, resources were shifted to other matters. Considering the nature of this case, the Court finds that there would be prejudice to the Government if the plea were withdrawn.

After considering the evidence presented, the arguments of counsel, and reviewing the record, the Court finds that none of the *Carr* factors weigh in Defendant's favor. Defendant presented no evidence that convinces the Court that Defendant should be allowed to withdraw her plea of guilty. Given the totality of the circumstances, the Court finds that Defendant has failed to demonstrate a

fair and just reason to withdraw her plea of guilty.[5, 6]

## RECOMMENDATION

The Court recommends that Defendant's Motion to Withdraw Guilty Plea (Dkt. #323) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place

---

[5] In her final brief before the Court, Defendant raises ineffective assistance of counsel in violation of the Sixth Amendment under *Strickland v. Washington*, 466 U.S. 668 (1984). A movant who seeks to overturn her conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). In order to succeed on a claim of ineffective assistance of counsel, a movant must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981); *see also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 697. Defendant does not provide any detailed argument other than to reassert the grounds asserted to allow her to withdraw her plea. The Court makes no finding on whether counsel provided effective assistance of counsel.

[6] Defendant's final statement to the Court is that "[t]his is not a close call or a hard call." The Court has spent considerable resources allowing Defendant the ability to develop the record in this case. At the end, the Court agrees that this case is not a close case. Defendant knew she was participating in a drug conspiracy, and the fact that Defendant found out later that the drug involved was different than the one that she thought was involved is immaterial. Despite Counsel's rhetoric and multiple opportunities to supplement the briefing in this case, Defendant has not provided the Court with any legal authority that Defendant's mistake about the drug she was transporting is material in this case. The evidence Defendant admitted at the time of her plea demonstrates that events occurred in the Eastern District of Texas. Moreover, examining the evidence at the various post-plea hearings also demonstrates, based upon the credible evidence, that Defendant passed through the Eastern District of Texas. Furthermore, there was evidence offered, which was uncontested by Defendant, that one of the Defendants in this conspiracy was arrested in the Eastern District of Texas. Although the Court does not approve of Hill's handling of this case, when the Court considers all of the facts of this case, this is not a close case, and Defendant should not be able to withdraw her plea.

16

in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 10th day of July, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE