# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case Number: 4:10-cr-242 |
| v. | § | Judge Mazzant |
| | § | |
| PERLA YAZMINE RODRIGUEZ (9) | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Perla Yazmine Rodriguez's Motion for Compassionate Release (Dkt. #402). The Court, having considered the motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

## I.  BACKGROUND

On November 6, 2014, Defendant Perla Yazmine Rodriguez ("Rodriguez") was sentenced to 168 months' imprisonment after pleading guilty to Conspiracy to Possess with Intent to Manufacture and Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine or 50 Grams or More of Methamphetamine (actual), in violation of 21 U.S.C. § 846 (Dkt. #358). Rodriguez was released to home confinement on October 13, 2021, under the supervision of Residential Reentry Management (RRM) San Antonio pursuant to the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No.116-136, 134 Stat. 281 ("CARES Act") (Dkt. #402 at p. 1). The Bureau of Prisons ("BOP") projects Rodriguez will be released on December 16, 2024. *See* https://www.bop.gov/inmateloc/ (Register Number: 07512-380).

Rodriguez seeks compassionate release for three reasons. First, Rodriguez claims to suffer from kidney failure,[1] asthma, hypertension, and depression, which combined with and risk of contracting COVID-19, constitutes "extraordinary and compelling reasons" to grant a sentence

---

[1] There is no record of kidney failure. However, Rodriguez's other asserted conditions are documented in the medical records.

reduction (Dkt. #402 at p. 1).  Second, Rodriguez identifies as a man and received hormone therapy from the BOP while incarcerated at FCI Dublin, however, Rodriguez's alleges such treatment was inadequate and Rodriguez was harassed for her gender identification (Dkt. #402 at p. 2).  Finally, Rodriguez has an adolescent child whose life Rodriguez desires to participate in without the threat of future re-incarceration at FCI Dublin (Dkt. #402 at pp. 1–2).[2]  The Government opposes the motion, asserting Rodriguez's health and family conditions are not "extraordinary and compelling" (Dkt. #410).

## II.  LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances."  *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).  One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release.  Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 made the first major changes to compassionate release since its

---

[2] On December 22, 2021, Attorney General Garland issued a memorandum opinion addressing whether the BOP would eventually have to recall inmates who had been released to home confinement pursuant to the CARES Act (the "Memorandum") (Dkt. #410, Exhibit C).  The Memorandum stated that "prisoners in extended home confinement" will not "be returned *en masse* to correctional facilities when the emergency period ends" (Dkt. #410, Exhibit C at p. 2).  This stance represents a more lenient shift from the Attorney General's prior position that the BOP "would be required to recall all such prisoners to correctional facilities" (Dkt. #410, Exhibit C at p. 1).  The Memorandum does not change the Court's analysis but does undercut Rodriguez's concerns about the future possibility of recall to FCI Dublin.

authorization in 1984. Pub. L. 115-391, 132 Stat. 5194.  Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release.  Instead, the law enabled a defendant to move for compassionate release directly in district court after exhausting their administrative rights.  18 U.S.C. § 3582(c)(1)(A).  Prior to this change, the BOP retained sole gatekeeping authority over compassionate release petitions.  *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020).  This resulted in underuse and mismanagement.[3]  *Id.*  Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release."  Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

Substantively, the First Step Act also modified the "extraordinary and compelling reasons" determination.  Congress never defined what constitutes "extraordinary and compelling," but rather delegated this determination to the Sentencing Commission.[4]  By the text of § 3582(c)(1)(A), any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  However, since passage of the First Step Act, the Sentencing Commission has not updated its guidelines on compassionate release.[5]  This has created significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit recently joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in

---

[3] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited April 14, 2020).  And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director.  *Id.*; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 Md. L. Rev. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

[4] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

[5] The Sentencing Commission currently lacks a quorum to issue new guidelines.

concluding that § 1B1.13 is no longer binding on a district court.  *See United States v. Shkambi*, 2021 WL 1291609, at *4 (5th Cir. 2021) ("The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a).  In reaching this conclusion, we align with every circuit court to have addressed the issue.").   Under this new framework, § 1B1.13 still binds district courts on motions made by the BOP, but for motions made directly by an inmate, district courts are free to consider any relevant fact in determining if "extraordinary and compelling reasons" exist.  *See Brooker*, 976 F.3d at 235–36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no "applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release").

Despite this newfound discretion, district courts are not without guidance in determining whether "extraordinary and compelling reasons" exist.  First, Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t) (emphasis added).  Second, the Sentencing Commission's policy statement and commentary is still persuasive. *United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn., Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and

compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)").  Application Note 1 of the policy statement provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver.  U.S.S.G. § 1B1.13, n.1(A)-(C).  Lastly, BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors BOP considers grounds for compassionate release.  *See* PS 5050.50 ¶¶ 3–6.  These grounds are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the offense.[6]  *Id.*

Building from this guidance, district courts across the country have identified additional situations where "extraordinary and compelling reasons" exist.  First, while rehabilitation alone is not an "extraordinary and compelling" reason for a sentence reduction, it can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition.[7]  *See United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's

---

[6] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'"  *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 ¶ 7).

[7] 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community.  Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

rehabilitation).  If an inmate demonstrates a long, comprehensive record of rehabilitation, it goes to whether injustice would result if they remain incarcerated.  *See Brooker*, 976 F.3d at 238 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction).  Second, courts consider any changes in law and the sentencing guidelines when determining if a sentence is extraordinary.  For example, courts grant compassionate release at a remarkable rate for inmates subject to the now abolished § 924(c) sentence-stacking.  *See McCoy*, 981 F.3d at 285 ("As the court observed in *Bryant*, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)").  Though Congress did not retroactively eliminate § 924(c) sentence-stacking, courts consider whether the outdated policy warrants relief on a case-by-case basis.[8]

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction.  *See* 18 U.S.C. § 3582(c)(1)(A).  These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[8] *See* Shon Hopwood, *Second Looks & Second Chances*, 41 Cᴀʀᴅᴏᴢᴏ L. Rᴇᴠ. 83, 123–24 (2019) (arguing Congress did not make § 924(c) sentence stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*").

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

### III. DISCUSSION

Rodriguez moves for compassionate release based on health concerns related to the COVID-19 pandemic (Dkt. #402).   The Government argues Rodriguez does not provide "extraordinary and compelling" reasons for early release (Dkt. #410).

Although Rodriguez has met § 3582(c)(1)(A)'s exhaustion requirement, Rodriguez has not met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of Rodriguez's sentence.  Rodriguez's motion, therefore, must be denied.

## A.  Rodriguez Has Met Section 3582(c)(1)(A)'s Exhaustion Requirement.

The Court may only consider the current motion for compassionate if Rodriguez first meets § 3582(c)(1)(A)'s exhaustion requirement.   Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or waiting thirty days without receiving a response to a request, whichever is earlier.[9]  *Id.*

---

[9] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United*

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable.  *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period.").  If a defendant has not sought relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider their motion.

On July 11, 2020, Rodriguez submitted a request to the warden at FCI Dublin to grant Rodriguez compassionate release.  On September 29, 2021, Warden Stacey N. Stone denied the request (Dkt. #402, Exhibit 6).  Thus, Rodriguez has met § 3582(c)(1)(A)'s exhaustion requirement.  However, Rodriguez's motion nevertheless fails because Rodriguez has not established "extraordinary and compelling" reasons for early release.

**B.  Rodriguez Has Not Met Section 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.**

Rodriguez's compassionate release motion turns on whether the health risks associated with COVID-19, coupled with Rodriguez's health conditions and necessary medical care, constitute extraordinary and compelling reasons to reduce Rodriguez's sentence.  The motion fails because Rodriguez's conditions are not severe enough to constitute "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).

The Court has discretion to decide whether Rodriguez's conditions present "extraordinary

---

*States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

and compelling reasons" warranting a sentence reduction.  *See Shkambi*, 2021 WL 1291609, at \*4.

The Court is not bound by the Sentencing Commission's policy statement and may consider any

relevant facts in evaluating Rodriguez's condition of incarceration.  *Id.*  Typically, courts consider

whether a defendant suffers from a serious health condition, has a record of rehabilitation, the

nature and circumstances of defendant's offense, and whether a sentence is based on outdated law.

*See Brooker*, 976 F.3d at 238.

When considering if a defendant's health condition supports compassionate release, the

mere existence of COVID-19 in society cannot independently justify a sentence reduction.  *See*

*United States v. Miller*, No. 2:17-CR-015-D, 2020 WL 2514887, \*2 (N.D. Tex. May 15, 2020)

(citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  For a defendant to be granted

compassionate release based on COVID-19, defendant must have a serious comorbidity and

evidence the facility is not effectively controlling the spread of the virus.  *See United States v.*

*Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at \*3 (S.D. Tex. June 2, 2020) ("General

concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are

insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a

sentence.").

In the instant case, Rodriguez's health conditions do not warrant compassionate release.

Rodriguez is not subject to a terminal illness.  Rodriguez has been able to provide self-care in

prison, and in home confinement.  While Rodriguez asserts FCI Dublin's hormone treatment

therapy was lacking, the records show Rodriguez failed to attend at least four appointments and

thus doctors were "unable to collect labs" to evaluate the efficacy of Rodriguez's testosterone

prescription (Dkt. #411 at pp. 7–11).  Furthermore, Rodriguez frequently failed to appear at the

line administering medication prescribed for Rodriguez's depression (Dkt. #411 at pp. 48–56).

Thus, even if Rodriguez eventually returns to FCI Dublin, assuming Rodriguez fully participates in the course of care prescribed, the Court sees no reason Rodriguez's treatment would suffer in the hands of BOP medical professionals.  Further, hypertension, diabetes mellitus, hyperlipidemia, coronary artery disease, acid reflux, dizziness, and a bladder tumor are insufficient to constitute "extraordinary and compelling reasons" alone unless combined with other extenuating circumstances. *See United States v. Manzano*, No. 16-cr-20593, 2020 WL 7223301, at *3–4 (E.D. Mich. Dec. 8, 2020) (collecting cases and finding hypertension and diabetes were "extraordinary and compelling" when combined with defendant's age and the lack of health protections implemented by her facility); *see also United States v. Guyton*, No. 11-271, 2020 WL 2128579, at *3 (E.D. La. May 5, 2020) (denying compassionate release for a 45-year-old with mild hypertension).  Rodriguez's age of 35 also does not support compassionate release.

Furthermore, Rodriguez already contracted the COVID-19 virus and recovered.  Although there is not yet scientific certainty regarding the risk of reinfection, the large majority of courts to address the matter have concluded that the risk is mitigated and compassionate release not justified for an inmate who has contracted and recovered from the virus.  *See, e.g.*, *United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release"); *United States v. Pavao-Kaaekuahiwi*, 2020 WL 7700097, at *3 (D. Haw. Dec. 28, 2020) (relying on Oxford University study suggesting "that people who have a positive antibody test result using widely available assays have substantial immunity to SARS-CoV-2 and are at lower risk for future infection"); *United States v. Jenkins*, 2021 WL 665854, at *4 (S.D. Ind. Feb. 19, 2021) ("To date, this Court has declined to find extraordinary and compelling circumstances

warranting a sentence reduction when a defendant has recovered from COVID-19 – even when that defendant has risk factors for severe symptoms . . . The fact that the BOP is now actively vaccinating inmates against COVID-19 . . . only underscores the speculative nature of any concern about reinfection").

Since recovering from Covid, Rodriguez claims to still suffer from COVID-19 symptoms. Nothing in Rodriguez's BOP medical records corroborates that assertion.

Additionally, Rodriguez received both doses of the Pfizer vaccine for COVID-19 in May and June of 2021 (Dkt. #410, Exhibit B at p. 80).  Rodriguez's vaccination status mitigates concerns over the risks associated with contracting COVID-19.  *See United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)"); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (finding defendant who presented obesity, diabetes, and hypertension, had previously tested positive, but had received the first dose could not meet his burden of establishing that his COVID-19 risk was an "extraordinary and compelling reason").

Weighing the evidence, Rodriguez fails to prove that continued incarceration or home confinement is "extraordinary and compelling" under § 3582(c)(1)(A)(i) framework.  *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the

test for compassionate release").[10]

*          *          *

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because Rodriguez has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), Rodriguez's motion must be denied.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant Carlos Perla Yazmine Rodriguez's Motion for Compassionate Release (Dkt. #402) is **DENIED**.

**IT IS SO ORDERED.**
 **SIGNED this 24th day of January, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[10] Given Defendant's failure to meet § 3582(c)(1)(A)'s requirements, the Court need not address whether the applicable 18 U.S.C. § 3553(a) factors support a sentence reduction.